IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 11, 2019 Session

## SANDRA ANN PIPPIN v. CHRISTINA MICHELLE PIPPIN

Appeal from the General Sessions Court for Wilson County
No. 2018-CV-2, 18-AD-242     John Thomas Gwin, Judge

_____

### No. M2018-00376-COA-R3-CV

_____

ANDY D. BENNETT, J., dissenting.

This opinion is stuck in the past. In my opinion, *Obergefell v. Hodges*, ___ U.S. ___, 135 S. Ct. 2584 (2015), altered the way we must interpret many statutes relating to marriage and parentage. In *Obergefell*, the United State Supreme Court legalized same-sex marriage in the entire United States. It has met with resistance, just like *Brown v. Board of Education of Topeka*, 347 U.S. 483 (1954), and other United States Supreme Court cases that required society to alter its thinking about its institutions.

Since *Obergefell* was decided, Tennessee has not chosen to revamp its marriage and parentage laws. Opponents of *Obergefell* refer to the Tennessee Constitution's prohibition against same-sex marriage**.** However, *Obergefell* nullified that provision, just as *Brown* nullified Tennessee's constitutional provision mandating racial segregation in education, former Tenn. Const. Art. XI, § 12; *Loving v. Virginia*, 388 U.S. 1 (1967), nullified Tennessee's constitutional provision prohibiting interracial marriage, former Tenn. Const. Art. XI, § 14; and *McDaniel v. Paty*, 435 U.S. 618 (1978), nullified Tennessee's constitutional provision prohibiting ministers from serving in the General Assembly, Tenn. Const. Art. IX, § 1. *Obergefell* placed Tennessee in uncharted legal territory. That does not mean that *Obergefell* and its implications may be ignored.

The majority opinion dismisses the appeal based on standing. Before I discuss the law, some facts need to be reiterated. These facts come from Sandra Pippin's petition. For purposes of a motion to dismiss, they must be taken as true. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002).

- Sandra and Christina moved in together in September of 2008 along with Sandra's adopted son, J.

- Sandra proposed to Christina and gave her a ring. Christina legally changed her last name to Pippin.

- Sandra was the primary breadwinner.

- In late 2010 or early 2011, Sandra and Christina executed a sworn Domestic Partnership Affidavit to verify that they were a family, which allowed Christina to be placed on Sandra's employee insurance plan.

- They jointly purchased semen from the Midwest Sperm Bank, Christina was artificially inseminated, and later gave birth to the child. Sandra and Christina intended for the child to be raised equally by both.

- Sandra was an active and willing participant in all pre-birth medical care.

- Sandra was present at the child's birth and was the first person to hold him.

- From birth, the child knew Sandra as "Momma Sandy" and Christina as "Momma Christy, by agreement of the parties.

- Sandra was listed as the child's other parent on all doctor, school and extracurricular activities forms.

- Sandra and Christy separated for a ten-month period, March 2014 to January 2015, but still co-parented the child.

- Sandra and Christy permanently separated in December 2016, but arranged a co-parenting plan.

- After an August 2017 attempt to reconcile, Christina began to renege on the agreed co-parenting schedule.

Ultimately, after years of co-parenting the two children, Christina decided Sandra was unfit to care for the child. Meanwhile, Christina embarked on a new romantic relationship. Sandra filed a petition in the Wilson County General Sessions Court seeking to establish parentage and parenting time. After a hearing on February 1, the court held that it was in the child's best interest to continue having parenting time with Sandra. Christina filed a motion to dismiss on February 2, stating, "the parties were never married, and the child is the biological child of Respondent, and is not the biological child, adopted child or stepchild of Petitioner. Petitioner has no standing under Tennessee law to seek parenting time." On February 26, the trial court entered an order

granting the motion. The court granted visitation between Sandra and the child pending appeal.

The majority opinion accurately summarizes the law of standing as follows:

> Standing is a judicial doctrine used to determine whether a party is "entitled to have a court decide the merits of a dispute." The doctrine of standing precludes courts from adjudicating "'an action at the instance of one whose rights have not been invaded or infringed.'" More specifically, this doctrine "restricts '[t]he exercise of judicial power … to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate.'" Where the person seeks to base his or her standing on a statute, he or she must show that the "'claim falls within the zone of interests protected or regulated by the statute in question.'" (citations omitted).

Tennessee Code Ann. § 68-3-306

"A child born to a married woman as a result of artificial insemination, with the consent of the married woman's husband, is deemed to be the legitimate child of the husband and wife." Tenn. Code. Ann. § 68-3-306. The majority rejects this statute as providing standing because the statute does not confer any rights of parentage, the construction offered by Sandra is strained and there was no marriage.

The majority maintains that Tenn. Code. Ann. § 68-3-306 merely deals with birth certificates and nothing more. This attitude ignores the significance of appearing as a parent on a birth certificate. Appearing on a birth certificate is "more than a mere marker of biological relationships." *Pavan v. Smith*, ___ U.S. ___, 137 S. Ct. 2075, 2078 (2017). In fact, it is a vehicle for exercising many parental rights. A birth certificate is "a document often used for important transactions like making medical decision for a child or enrolling a child in school." *Id*. That is why the United States Supreme Court held in *Pavan* that same-sex and opposite-sex couples must be treated the same under the Arkansas birth certificate statutes when artificial insemination is used. *Id*. at 2077. As *Pavan* shows, birth certificates confer or support many parental rights.

In light of *Obergefell* and *Pavan*, we must interpret Tenn. Code. Ann. § 68-3-306 as constitutional. *Davis-Kidd Booksellers, Inc., v. McWherter*, 866 S.W.2d 520, 529-30 (Tenn. 1993) ("When faced with a choice between two constructions, one of which will sustain the validity of the statute and avoid conflict with the Constitution, and another which renders the statute unconstitutional, we must choose the former."). The Tennessee Attorney General has applied this rule of interpretation to Tenn. Code. Ann. § 68-3-306. In *Witt v. Witt*, No. E2017-00884-COA-R3-CV, 2018 WL 1505485 (Tenn. Ct. App. Mar. 27, 2018), this Court noted that "[t]he Attorney General asserted that the statute could be read constitutionally, however, by employing Tenn. Code Ann. § 1-3-104, which

provides: . . . (b) Words importing the masculine gender include the feminine and neuter, except when the contrary intention is manifest." *Witt*, 2018 WL 1505485, at *2. This interpretation is constitutionally required. Thus, the word "husband" in  Tenn. Code. Ann. § 68-3-306 must be interpreted to include both the male and female genders.

The majority's last objection to Tenn. Code. Ann. § 68-3-306 providing standing is that there was no marriage. This is true. *Obergefell* was not decided until the relationship between Sandra and Christina was ending. So we must be mindful of the fact that Tennessee would not let them marry. Sandra proposed to Christina. Sandra gave Christina a ring. They executed a Domestic Partnership Affidavit. They held themselves out as a family. And, perhaps most importantly for this case, they created the child together.[1] There is no difference between Sandra and the "husband" in Tenn. Code. Ann. § 68-3-306 except for a marriage that the State of Tennessee would not allow. We know from *Obergefell* that the same-sex marriage prohibition violated Sandra's due process and equal protection rights. Fundamental notions of fairness and justice cannot allow a constitutional violation of her rights to be the impediment to Sandra Pippin's standing under the facts of this case.

Tenn. Code. Ann. § 36-2-304

"A man is rebuttably presumed to be the father of a child if . . . [w]hile the child is under the age of majority, the man receives the child into the man's home and openly holds the child out as the man's natural child." Tenn. Code Ann. § 36-2-304(a)(4). Essentially, the application of this statute boils down to Sandra is a woman, not a man and so, according to the majority, the statute does not apply because of the statute's definitions.  The application of this statute is so clear to Sandra's situation that one can see the discrimination. Based on the case law I have already discussed, I would rule that under the facts of this case Sandra Pippin has standing under Tenn. Code Ann. § 36-2-304(a)(4) when it is read in a constitutionally neutral way.

Other Considerations

The majority opinion also relies on *In re Thompson*, 11 S.W.3d 913 (Tenn. Ct. App. 1999) and *In re Hayden C. G-J.*, No. M2012-02701-COA-R3-CV, 2013 WL 6040348 (Tenn. Ct. App. Nov. 12, 2013), for the proposition that a partner of a biological mother does not have standing to seek visitation. These cases were decided before *Obergefell*. As I stated at the beginning of this dissent, *Obergefell* changes the way we must look at marriage and parentage statutes. If they ever did, *In re Thompson* and *In re Hayden C. G.-J.* no longer govern this case.

---

[1] One could reasonably infer that because Sandra was the breadwinner, she paid for the semen and the procedures needed for the artificial insemination.

We give great deference to trial courts in the areas of child visitation. When giving his oral decision, the trial judge observed that "There is no question in my mind that it would be in this child's best interest to continue in the only family that he's ever had." Transcript of February 15, 2018 at 30. The trial court granted Sandra visitation during the proceedings and pending the appeal. That speaks volumes. He also said the following:

> I don't believe outside of legislative relief that you'll get any relief short of the Tennessee Supreme Court. And if they concern themselves - - boy, that's harsh. If they concern themselves with the best interest of the child, then they'll give the trial-level court something else to work with.

Transcript of February 15, 2018 at 38.

## Conclusion

I would grant Sandra Pippin standing and remand the case for further proceedings. In a judicial system where right and justice are paramount, there is no way that Sandra Pippin should be denied her parental rights to the child. Therefore, I respectfully dissent.

_____
ANDY D. BENNETT, JUDGE