Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,851-JAC

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE: KRISTEN NICOLE DENNIS AND
JESSICA FALCON DENNIS APPLYING
FOR INTRAFAMILY ADOPTION OF J.K.D.

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. A4409

Honorable Sharon Ingram Marchman, Judge

* * * * *

CUMMINS & FITTS, LLC                         Counsel for Appellants
By: Sophie Nadine Barksdale
    Jessica Leigh Fitts

* * * * *

Before PITMAN, STONE, and COX, JJ.

PITMAN, C.J., concurs in the result.

COX, J., concurs in the result.

**STONE, J.**

The appellants-petitioners, Jessica Dennis ("Jessica") and Kristen Dennis ("Kristen"), are two women who were legally married on October 12, 2019. During this marriage, Jessica was artificially inseminated by a donor and gave birth to a child, who has lived in the home of the appellants since birth. With the consent of Jessica and the biological father, Kristen seeks to adopt the child as a "stepparent" in an intrafamily adoption pursuant to La. Ch. C. art. 1243. The joint petition for intrafamily adoption states that Kristen has "formed a close, loving relationship with the child," and "has provided continuous emotional and financial support, acting as a mother figure to the child." The appellants' trial court pleadings are devoid of even the slightest allusion to an attack on the constitutionality of La. Ch. C. 1243. Likewise, the trial court record is devoid of any request for service from the attorney general.

The trial court denied the petition for intrafamily adoption but declared *sua sponte* in the judgment that filiation already exists via the presumption of paternity established in La. C.C. art. 185, which states:

> The husband of the mother is presumed to be the father of a child born during the marriage or within three hundred days from the date of the termination of the marriage.

The trial court changed the meaning of the terms "husband" and "father" to include a woman married to the biological mother.

On that basis, the court denied the adoption as moot. The court further raised *sua sponte* exceptions of no cause and/or no right of action. The trial court found that a same-sex spouse is not on the list of potential adoptive parents established in La. Ch. C. art. 1243(A), which in relevant part states:

A *stepparent*, step grandparent, great-grandparent, grandparent, or collaterals within the twelfth degree may petition to adopt a child if all of the following elements are met (Emphasis added).

Jessica and Kristen filed this appeal asking this court to reverse the trial court's judgment declaring Kristen to be a legal parent of the child via the paternity presumption of La. C.C. art. 185. The appellants argue that, because Kristen is a woman (and thus biologically incapable of fathering a child), the trial court erred in calling her a "husband" and a "father" for purposes of La. C.C. art. 185. They further urge this court to rule that Kristen has a cause and right of action as someone who may petition for adoption under La. Ch. C. art. 1243. They contend that she should be labeled a "stepparent" for purposes of La. Ch. C. art. 1243, despite their concession that she is not actually a stepparent; they candidly suggest that we should alter the meaning of that word to accommodate their constitutional rights.

## DISCUSSION

Thus, the appellants ask us to decide whether the terms "stepparent" and/or "husband" and "father"–as used in the relevant legislation–include a woman married to a woman. These are questions of law, and thus the trial court's decisions on these points are subject to de novo review. *DePhillips v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 19-01496 (La. 7/9/20), 340 So. 3d 817. However, before we reach those questions, a review of fundamental constitutional principles is necessary.

Article II of the Louisiana Constitution explicitly implements the doctrine of separation of powers. "The powers of government of the state are divided into three separate branches: legislative, executive, and judicial."

2

La. Const. art. II, § 1. "Except as otherwise provided by this constitution, *no one of these branches…shall exercise power belonging to either of the others*." La. Const. art. II, § 2.[1] (Emphasis added).

"The sources of law are legislation and custom."[2]  La. C.C. art. 1. "The legislative power of the state is vested in a legislature, consisting of a Senate and a House of Representatives." La. Const. art. III, § 1. "Legislation is a solemn expression of legislative will." La. C.C. art. 2. Under our constitution, it is the sole province of the legislature to *make* law, and the exercise of that power is extensively circumscribed by the Louisiana Constitution.[3]

It is the role of the judiciary to interpret the law, not to make law. *State v. Reddick*, 21-01893 (La. 10/21/22), 351 So. 3d 273, 274; *State v. Winfield*, 222 La. 157, 62 So. 2d 258 (La. 1952). "[T]he judicial branch may not usurp those powers which are vested in the other two branches." *Plaquemines Par. Gov't v. Hinkley*, 19-0929 (La. App. 4 Cir. 4/22/20), 364

---

[1] Our current La. Const. art. II is *in substance* identical to its predecessor, i.e., La. Const. art. II of the Constitution of 1921, which states:
> Section 1. The powers of the government of the State of Louisiana shall be divided into three distinct departments — legislative, executive, and judicial.
> Section 2. No one of these departments, nor any person or collection of persons holding office in one of them, shall exercise power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

[2] "Custom results from practice repeated for a long time and generally accepted as having acquired the force of law. Custom may not abrogate legislation." La. C.C. art. 3.

[3] To become law, a bill must: (1) receive a majority vote in both houses of the legislature and be presented to the governor for approval or veto; and (2) not be vetoed by the governor; and (3) satisfy a multitude of intricate procedural requirements. La. Const. Art. III, §§ 15, 17, and 18; La. Const. Art. IV, § 5; *Cobb v. Louisiana Bd. of Institutions*, 237 La. 315, 111 So. 2d 126 (1958), *on rehearing*; § 3:1. Summary of constitutional procedural requirements, 20 La. Civ. L. Treatise, Legis. Law & Proc. (2023-2024 ed.)

So. 3d 214, 218, *writ denied*, 20-01191 (La. 1/26/21), 309 So. 3d 345, *citing, Hoag v. State*, 04-0857(La. 12/1/04) 889 So. 2d 1019, 1022; *accord, Crooks v. State Through Dept. of Nat. Res.*, 22-00625 (La. 1/27/23), 359 So. 3d 448, *reh'g denied*, 362 So. 3d 424 (La. 3/16/23). Therefore, "[c]ourts can do no more than interpret and construe statutes. The[y] cannot, under the guise of interpretation, assume legislative functions." *State v. Vallery*, 212 La. 1095, 1099, 34 So. 2d 329, 331 (1948). The amendment of legislation "is a matter which addresses itself to the discretion of the Legislature," not to the judiciary. *Succession of Farrell*, 200 La. 29, 34, 7 So. 2d 605, 606 (1942). The judiciary is not authorized to enlarge the scope of a statute or code article because "[that] is a matter that lies exclusively within the province of the legislative branch of our government." *Mossler Acceptance Co. v. Denmark*, 211 La. 1078, 1081, 31 So. 2d 216, 218 (1947). Likewise, "*it is not the judiciary's role to fill in gaps left by the legislature.*" *Cook v. Sullivan*, 20-01471 (La. 9/30/21), 330 So. 3d 152, 15. (Emphasis added).

Only if the legislation in question violates the constitution may a court invalidate it:

> Courts are not at liberty to declare an act void because, in their opinion, it is opposed to the spirit supposed to pervade the Constitution; nor because of the harshness or unreasonableness of the act; nor can they inquire into the justice or injustice of a statutory provision, or the expediency or wisdom thereof, such being the exclusive province of the Legislature, and not of the courts; and…the courts cannot annul or pronounce void any act of the legislature on any other ground than repugnancy to the constitution (Internal quotation marks omitted).

*Ward v. Leche*, 189 La. 113, 120, 179 So. 52, 54 (1938). Indeed, it is within the exclusive power of the judiciary to strike down legislation which violates the constitution. *Id.*; *State v. Expunged Rec. (No.) 249,044*, 03-1940 (La.

4

7/2/04), 881 So. 2d 104, 107, *as clarified on reh'g* (Sept. 24, 2004); *Bd. of Directors of Louisiana Recovery Dist. v. All Taxpayers, Prop. Owners, & Citizens of State of La.*, 529 So. 2d 384, 387 (La. 1988).

Nonetheless, this judiciary power is only operative if a party properly invokes it. Louisiana jurisprudence adheres strictly to the procedural prerequisites which must be fulfilled before a court may declare a law invalid for violation of the constitution; these prerequisites are: (1) the constitutionality of the legislation is attacked in a pleading stating particularized grounds of unconstitutionality in the trial court;[4] and (2) service of that pleading on the attorney general. *State v. Overstreet*, 12-1854 (La. 3/19/13), 111 So. 3d 308, 316; La. C.C.P. art. 1880; La. R.S. 13:4448; La. R.S. 49:257; *Huber v. Midkiff*, 02-0664 (La. 2/7/03), 838 So. 2d 771, 777. "[A] district court may not *sua sponte* rule that a statute is unconstitutional, nor can it declare a statute unconstitutional on grounds other than those asserted by a movant." *Overstreet*, *supra*. Likewise, "a litigant who fails to plead the unconstitutionality of a statute in the trial court cannot raise the constitutional issue in the appellate court." *Johnson v. Welsh*, 334 So. 2d 395, 396 (La. 1976).

The cases adhering to these procedural prerequisites to the disappointment of litigants are legion. *Vallo v. Gayle Oil Co.*, 94-1238 (La. 11/30/94), 646 So. 2d 859; *Overstreet*, *supra; Johnson*, *supra; Huber,*

---

[4] Several exceptions to this general rule have been recognized. *Unwired Telecom Corp. v. Par. of Calcasieu*, 03-0732 (La. 1/19/05), 903 So. 2d 392, 399. However, none of these exceptions is relevant in this case. The exceptions are: (1) when a statute attempts to limit the constitutional power of the courts to review cases; (2) when the statute has been declared unconstitutional in another case; (3) when the statute applicable to the specific case becomes effective after the appeal is lodged in the higher court; or (4) when an act, which is the basis of a criminal charge, is patently unconstitutional on its face and the issue is made to appear as an error patent on the face of the record.

*supra; Arrington v. Galen–Med, Inc.*, 947 So. 2d 719 (La. 2007); *State v. Broussard*, 18-0616 (La. App. 1 Cir. 12/21/18), 268 So. 3d 307; *Clark v. Mangham*, 55,073 (La. App. 2 Cir. 5/24/23), 362 So. 3d 1053, 1057, *reh'g denied* (6/22/23), *writ denied*, 23-01028 (La. 11/8/23), 373 So. 3d 61, *recons. not cons. sub nom. Clark v. Mangham, Hardy, Rolfs & Abadie*, 23-01028 (La. 1/24/24), 377 So. 3d 687; *Benson v. City of Marksville*, 01-1078 (La. App. 3 Cir. 3/20/02), 812 So. 2d 687, *writ denied*, 02-1066 (La. 6/14/02), 817 So. 2d 1158; *State v. Grant*, 16-0104 (La. App. 4 Cir. 8/24/16), 198 So. 3d 1219; *State Dep't of Child. & Fam. Servs. ex rel. J.C. v. Charles*, 13-527 (La. App. 5 Cir. 12/27/13), 131 So. 3d 1054; *State v. Krazy Laughing Firebird*, 08-65 (La. App. 5 Cir. 1/28/08) 2008 WL 10752417. Thus, if a party fails to invoke the court's power to strike down legislation on constitutional grounds, the court is without authority to do violence to the legislation.

The legislature has codified and recently amplified these procedural requirements. La. C.C.P. art. 1880 requires that, if the constitutional validity of Louisiana legislation is challenged in a trial court pleading, "the attorney general of the state shall also be served with a copy of the proceeding [pleading] and be entitled to be heard." An amendment to La. C.C.P. art. 1880, effective April 29, 2024, adds: "If the law is alleged to be unconstitutional, pleadings shall be made pursuant to the requirements in Articles 855.1 and 1845," both of which are new and bear that same effective date. La. C.C.P. art. 1845 states: "A judgment rendering a law unconstitutional is absolutely null and shall be void and unenforceable if the provisions of Article 855.1 have not been met." La. C.C.P. art. 855.1 states:

6

> All civil actions alleging that a law is unconstitutional shall be in writing and be brought in an ordinary proceeding. The pleading shall be served upon the attorney general of the state in accordance with Article 1314. Upon proper service, the attorney general shall have thirty days to respond to the allegations or represent or supervise the interests of the state.

Furthermore, La. R.S. 13:4448 requires that the attorney general be given an opportunity to be heard in any appellate proceeding in which the constitutionality of Louisiana legislation is challenged:

> Prior to adjudicating the constitutionality of a statute of the state of Louisiana, the courts of appeal and the Supreme Court of Louisiana shall notify the attorney general of the proceeding and afford him an opportunity to be heard. The notice shall be made by certified mail. No judgment shall be rendered without compliance with the provisions of this Section; provided where the attorney general was not notified of the proceeding, the court shall hold adjudication of the case open pending notification of the attorney general as required herein.

Nevertheless, a court must take constitutionality into account if the legislation at issue is susceptible of two *reasonable* constructions:

> [B]ecause it is presumed that the legislature acts within its constitutional authority in promulgating a legislative instrument, this court must construe a legislative instrument so as to preserve its constitutionality **when it is reasonable to do so**. *See State v. Fleury,* 01–0871, p. 5 (La.10/16/01), 799 So. 2d 468, 472; *Moore v. Roemer,* 567 So.2d 75, 78 (La.1990). In other words, if a legislative instrument is susceptible to two constructions, one of which would render it unconstitutional or raise grave constitutional questions, the court will adopt the interpretation of the legislative instrument which, **without doing violence to its language**, will maintain its constitutionality. *See Hondroulis v. Schuhmacher,* 553 So. 2d 398, 416–17 (La.1988). (Emphasis added).

*Louisiana Fed'n of Tchrs. v. State*, 13-0120 (La. 5/7/13), 118 So. 3d 1033, 1048.

Furthermore, a challenger who properly places the constitutionality of legislation at issue before the court bears the burden of proof:

*l*

> All statutory enactments are presumed constitutional, and every presumption of law and fact must be indulged in favor of legality…[A]ll laws are presumed to be constitutional until the contrary is made clearly to appear, and that he who urges the unconstitutionality of a law must specially plead its unconstitutionality, and show specifically wherein it is unconstitutional…The presumption is especially forceful in the case of statutes enacted to promote a public purpose. The legislature is given great deference in the judicial determination of a statute's constitutionality, and legislators are presumed to have weighed the relevant constitutional considerations in enacting legislation. Because a state statute is presumed constitutional, the party challenging the statute bears the burden of proving it is unconstitutional. The burden plaintiffs carry in challenging the constitutionality of a statute is a heavy burden. It is not enough for a person challenging a statute to show that its constitutionality is fairly debatable; it must be shown clearly and convincingly that it was the constitutional aim to deny the legislature the power to enact the statute. (Internal citations and quotation marks omitted).

*Carver v. Louisiana Dep't of Pub. Safety*, 17-1340 (La. 1/30/18), 239 So. 3d 226, 230.

The principles outlined above embody judicial respect for the constitutional limits on judicial power set forth in La. Const. art. II, § 2, and in so doing establish the following framework: (1) if and only if a party properly invokes a court's authority to "do violence" to legislation on constitutional grounds, a court may do so (unless the legislation can reasonably be interpreted so as to render it constitutionally valid); (2) in the absence of such an invocation, the court is limited to adopting a construction of a genuinely ambiguous legislation that renders it constitutionally valid *if and only if* such can be done without doing violence to the language of that legislation. *Ward, supra; Louisiana Fed'n of Tchrs., supra; Huber, supra; Overstreet, supra.* Thus, the principles of statutory interpretation are involved in both instances.

8

In *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371 (La. 7/1/08), 998 So. 2d 16, 26–27, *amended on reh'g* (9/19/08), the Louisiana Supreme Court explained: "The starting point in the interpretation of any statute is the language of the statute itself." Therefore, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences,[5] the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10. "The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter." La. C.C. art. 11. "When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. C.C. art. 12. Likewise, "[l]aws on the same subject matter must be interpreted in reference to each other." La. C.C. art. 13. Furthermore, the inquiry into legislative intent, meaning, and purpose is limited to that which existed *at the time the legislation in question was enacted*. *Louisiana Smoked Prod., Inc. v. Savoie's Sausage & Food Prod., Inc.*, 96-1716 (La. 7/1/97), 696 So. 2d 1373, 1379.

---

[5] "In order for a court to find a literal application results in absurd consequences, there must be a determination by the court that the specific application at issue arising from the literal wording would, if judicially enforced, produce a factual result so inappropriate as to be deemed outside the purpose of the law." *McLane S., Inc. v. Bridges*, 11-1141 (La. 1/24/12), 84 So. 3d 479, 485. (Internal quotation marks omitted). In other words, an absurd consequence exists only if the result of a literal application is inarguably contrary to the legislature's intent.

The Fourteenth Amendment to the United States Constitution was ratified on July 9, 1868, and is sometimes referred to as one of the "civil war amendments." In relevant part, it recognizes the rights of Due Process and Equal Protection:

> No State shall...deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Am. 14, § 1. Almost 150 years after the Fourteenth Amendment was ratified, in *Obergefell v. Hodges,* 576 U.S. 644, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015), the United States Supreme Court decided that this constitutional provision requires that same-sex couples have the right to marry to the same extent as heterosexual couples. In *Pavan v. Smith*, 582 U.S. 563, 564, 137 S. Ct. 2075, 2077, 198 L. Ed. 2d 636 (2017), the United States Supreme Court ruled that an Arkansas statute was unconstitutional because it required the name of the husband of a woman giving birth to a child to be stated on the child's birth certificate, but did not so require the name of a woman married to another woman who birthed a child. According to *Pavan*, "that differential treatment infringes *Obergefell*'s commitment to provide same-sex couples the [same] constellation of benefits that the States have linked to [heterosexual] marriage." (Internal quotation marks omitted).

With these precepts in mind, we turn to the issues presented in the case *sub judice.* First, we explain why we agree with the appellant's argument that the trial court erred in deeming Kristen, a woman, filiated with the child via the paternity presumption of La. C.C. art. 185.

The trial court's ruling was not without precedent. In *Boquet v. Boquet*, 18-798 (La. App. 3 Cir. 4/10/19), 269 So. 3d 895, 900, *writ denied,* 19-0673 (La. 6/17/19), 274 So. 3d 1261, the Third Circuit ruled that the words "husband" and "father" include a woman married to a woman for purposes of La. C.C. arts. 185 and 189. The *Boquet* opinion based its claim to authority for making these judicial alterations to the legislation on *Louisiana Fed'n of Tchrs, supra*, but overtly violated the limitations therein (as well as those in *Overstreet*, *supra*), stating:

> ***We note that while not procedurally proper to consider the constitutionality of La.Civ.Code arts. 185 and 189***,
> under *Louisiana Fed'n of Tchrs. v. State*, 13-120, 13-232, 13-350, pp. 22 (La. 5/7/13), 118 So.3d 1033, 1048 (citations omitted), the Louisiana Supreme Court laid out these principles:
> [...the] court must construe a legislative instrument so as to preserve its constitutionality ***when it is reasonable to do so.*** In other words, ***if a legislative instrument is susceptible to two constructions***, one of which would render it unconstitutional or raise grave constitutional questions, the court will adopt the interpretation of the legislative instrument which, ***without doing violence to its language,*** will maintain its constitutionality. (Emphasis added).

*Bouquet* at n.1. The *Boquet* court continued:

> In choosing to align La.Civ.Code arts. 185 and 189 with the current environment as laid out by *Obergefell* and *Pavan,* this court is adhering to these principles.

*Id.* However, *Boquet* obviously did not "adhere to" the limiting principles it quoted from *Louisiana Fed'n of Tchrs.* (which we emphasized above), but instead, fictionalized La. C.C. arts. 185 and 189 in disobedience of the boundaries of *Louisiana Fed'n of Tchrs., supra.* Furthermore, the *Boquet* court acknowledged that the parties had not satisfied the procedural prerequisites for invoking its authority to "do violence" to the language of

the legislation, but nonetheless did such violence in contravention of the well-settled jurisprudence cited extensively herein.[6]

Although it is obvious without explanation, we nonetheless state how and why *Boquet* is wrong as a matter of legislative construction. Neither the Children's Code nor the Civil Code defines "husband" or "father." However, even a most minimal understanding of the English language is sufficient to know that those terms do not and cannot include a woman. Because the meaning of these words has at all relevant times been clear and well-understood, there has been no need for legislative definition. Nonetheless, we note that Black's Law Dictionary aptly reflects the meaning of these words: (1) "husband" means a "married man; a man who has a lawful, living spouse"; (2) "man" means "an adult male"; and (3) "father" means a "male parent." Black's Law Dictionary (8th ed. 2004). The clear and unambiguous meaning of these terms, alone, more than suffices to demonstrate that a woman married to a woman cannot be a "husband" or a presumed "father" under La. C.C. art. 185. Therefore, *Boquet* defied not only the mandate of La. C.C. art. 9 to apply the law "as written," but also, the separation of powers established by La. Const. art. II, § 2, and the limiting principles set forth in *Louisiana Fed'n of Tchrs, supra*.

For all the same reasons that *Boquet* is wrong, the appellants' first assignment of error is meritorious. The trial court's *sua sponte* judgment declaring that Kristen Dennis, a woman, is the "husband" of Jessica Dennis

---

[6] *Vallo v. Gayle Oil Co.*, 94-1238 (La. 11/30/94), 646 So. 2d 859; Overstreet, *supra; Johnson, supra; Huber, supra;* Arrington *v. Galen–Med, Inc.*, *supra; State v. Broussard*, *supra; Clark v. Mangham*, *supra; Benson v. City of Marksville*, *supra; State v. Grant*, *supra; State Dep't of Child. & Fam. Servs. ex rel. J.C. v. Charles*, *supra; State v. Krazy Laughing Firebird*, *supra*.

and the presumed "father" of the child pursuant to La. C.C. art. 185 is wrong and we hereby reverse it.

Now we turn to the petition for intrafamily adoption pursuant to La. Ch. C. art. 1243. The appellants candidly admit that Kristen is not actually a stepparent but ask this court to label her with that term anyway to accommodate her constitutional rights under *Obergefell* and *Pavan*. We cannot label Kristen a stepparent for purposes of La. Ch. C. art. 1243. To do so would require us to disregard the appellants' failure to place the issue of that article's constitutionality properly before the court.

Nonetheless, we explain our reasons for agreeing with the appellants that Kristen is not a stepparent of the child. The term "stepparent" has been in La. Ch. C. art. 1243 since its original enactment in 1991, but has not been legislatively defined.[7] In consonance with common usage, Black's Law Dictionary defines "stepparent" as "the spouse of one's mother or father by a later marriage."[8] As indicated by the absence of a technical or jargonistic definition from both the legislation and the law dictionary, "stepparent" is not a legal idiom. Instead, its meaning in law is the same as its "generally prevailing" meaning in everyday usage. La. C.C. art. 11. Under that meaning, the facts of this case—i.e., a child conceived and birthed by artificial insemination of one woman in a same-sex marriage—do not create a stepparent-stepchild relationship between the child and the other woman in that marriage.

---

[7] Thus, the legislation's use of these terms substantially predates *Obergefell* (2015), prior to which Louisiana legislation emphatically rejected same-sex marriage.

[8] Black's Law Dictionary (8th ed. 2004).

13

The mere fact that the prohibition of same-sex marriage subsequently was deemed unconstitutional cannot operate as an automatic amendment to the legislative meaning of the term "stepparent." Nor does any court have the power to do such violence to the legislation outside the context of a procedurally valid challenge to the constitutionality of La. Ch. C. art. 1243. Despite having a clear opportunity to do so, the appellants have failed to manifest that context. *Obergefell* and *Pavan* provide *substantive* constitutional rights to same-sex couples which aim to place them in equality with heterosexual couples. However, equality likewise requires that enforcement of same sex-constitutional rights be subject to the same *procedural* requirements as other constitutional rights. Therefore, we are constrained to affirm the trial court's denial of the stepparent adoption.

## SUMMARY AND CONCLUSION

The terms "stepparent," "husband," and "father" in La. C.C. art. 185 and La. Ch. C. art. 1243, respectively, mean the same things today that they meant when this legislation was enacted, and thus none of them includes a woman married to a woman. We cannot judicially amend the meaning of the term "stepparent" in La. Ch. C. art. 1243, nor "husband" in La. C.C. art. 185, *nor any other term in any other legislation. Louisiana Fed'n of Tchrs., supra.* While we fully support the enforcement of constitutional rights, judicial amendment of legislation is not a valid avenue for the vindication of the appellants' rights under *Obergefell* and *Pavan*. The appellants' enforcement of those rights is subject to the same procedural requirements as the enforcement of other constitutional rights, and the appellants have failed to satisfy those requirements. As a result, La. Ch. C. art. 1243 applies as written.

Our decision does not preclude Jessica and Kristen from further pursuing this adoption in accordance with the proper procedure; however, we make no suggestion regarding what the outcome of that pursuit would be.

**DECREE**

The judgment of the trial court is **REVERSED** insofar as it declares that Kristen Dennis is presumed to be the child's "father" under La. C.C. art. 185. The judgment of the trial court is **AFFIRMED** insofar as it denies the petition for intrafamily adoption pursuant La. Ch. C. 1243.  All costs of this appeal are taxed to the appellants.