**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00425-CV**
_____

**IN THE INTEREST OF R.G.S.**

**On Appeal from the 418th District Court**
**Montgomery County, Texas**
**Trial Cause No. 22-12-16328-CV**

**MEMORANDUM OPINION**

Jennifer appeals the trial court's denial of her Petition to Adjudicate Parentage as to R.G.S.[1, 2] In two issues on appeal, Jennifer argues her claim for parentage is

---

[1]To protect the privacy of the child involved in this appeal, we identify the child by her initials, and appellant and appellee by their first names. *See* Tex. Fam. Code Ann. § 109.002(d).

[2]This case is part of a series of appeals between the same parties that we will address in separate opinions. In cause number 09-22-00384-CV we address the divorce between Jennifer and Amber. In cause number 09-23-00308-CV we address Jennifer's Petition for Adoption regarding R.G.S.

1

not barred by res judicata and denying her parentage violates her constitutional rights. For the reasons below, we affirm.

## Background

Amber and Jennifer married in July 2015. In 2016, Amber and Jennifer signed an agreement with Pacific Reproductive Services pursuant to which Amber underwent a reproductive procedure using a Pacific donor's sperm, and in 2017, Amber gave birth to R.G.S. In October 2020, Amber filed for divorce, identifying R.G.S. as a child born of the marriage.[3] On April 26, 2021, the parties appeared before the trial court to finalize their divorce/SAPCR in accordance with a Mediated Settlement Agreement ("MSA"), one of the terms of which was that Jennifer was to be adjudicated as a parent of R.G.S. Ten days prior to the hearing, the trial court had asked the attorneys to provide briefing on the issue of whether the court had the ability "to adjudicate a second mom." Prior to the hearing, Jennifer filed a First Amended Original Counterpetition wherein she asked the court to adjudicate parentage based on Texas Family Code section 160.106 and a case from our sister court, *Treto v. Treto*, 622 S.W.3d 397 (Tex. App.—Corpus Christi 2020, no pet.) (construing *Pavan v. Smith,* 582 U.S. 563 (2017) to provide "the ancillary benefits

_____

[3]The divorce was filed in the 418th District Court in Montgomery County under cause number 20-10-12649 with the style, "In the Matter of the Marriage of Amber [] and Jennifer [] and in the Interest of [R.G.S.]" and will be referred to as "the divorce/SAPCR" (a "SAPCR" is a suit affecting the parent-child relationship).

2

of a same-sex marriage, including the determination of maternity for the non-gestational spouse of a child born to the marriage."); *see also* Tex. Fam. Code Ann. § 160.106.

At the April 26, 2021 hearing, after questioning the attorneys about whether there was legal authority indicating the trial court could adjudicate Jennifer as a parent, the trial court put the case "on hold" and instructed the attorneys to "talk and decide what you are asking me to do today." When the court went back on the record, it noted that it had been presented a proposed Agreed Final Decree of Divorce which had been filed at 10:37 that morning, and which had been signed by both attorneys and both parties. Jennifer and Amber both testified at the hearing. Jennifer provided testimony regarding her actual care, control, and possession of R.G.S. during her marriage to Amber, and requested that she be named a non-parent conservator if the trial court decided not to adjudicate her as a parent of R.G.S.

At the conclusion of the hearing, the trial court announced its rulings, including, "I do find [Jennifer] to have standing pursuant 102.003, Subsection 9. I am confirming [Amber] as the mother of the child. I am not adjudicating [Jennifer] as a parent of the child." The trial court also announced it was approving the remainder of the parties' agreements pursuant to the MSA and that it was signing the proposed divorce decree that had been filed that morning. Jennifer did not object.

3

Consistent with the trial court's pronouncement, the Agreed Final Decree of Divorce includes the following language which is relevant to the issues in this appeal:

### Child of the Marriage

The Court finds that [Amber] is the parent of the following child:

Name: [R.G.S.]

[. . .]

The Court finds no other children of the marriage are expected.

*Standing*

The Court finds that JENNIFER [] has standing to bring a Suit Affecting the Parent-Child Relationship regarding the child pursuant to Section 102.003(9) of the Texas Family Code.

[. . .]

### Relief Not Granted

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

On the last page of the decree, Jennifer's and Amber's signatures appear under the following language: "APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE." Jennifer did not file a motion for new trial, nor an appeal.

4

Nearly six months later, in October 2021, Jennifer instituted this action by filing an Original Petition for Adoption of a Child; or in the Alternative, Original Petition to Adjudicate Parentage.[4] Amber filed an Original Answer and Motion to Dismiss, arguing Jennifer's claims are barred by the doctrines of res judicata and collateral estoppel. On September 6, 2022, the trial court held an evidentiary hearing after which it signed an Order Denying First Original Petition to Adjudicate Parentage. The trial court then severed the Original Petition to Adjudicate Parentage from the Original Petition for Adoption of a Child, making its order final and appealable. Jennifer then filed this appeal.

## Analysis

In her first issue, Jennifer argues that res judicata does not apply to her claim for parentage because "the trial court refused to adjudicate [Jennifer's parentage] one way or the other[]" in the divorce/SAPCR. The doctrine of res judicata prevents parties from relitigating matters that were already litigated in a prior lawsuit between themselves or between those in privity with them. *See Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 58 (Tex. 2006). The doctrine also prevents such parties from relitigating matters that, through diligence, could have been litigated in such a prior lawsuit. *Id*. "We apply the transactional approach to res judicata, which requires

---

[4]The petition was filed in the 418th District Court in Montgomery County under cause number 22-12-16328 with the style, "In the Interest of [R.G.S.]" and is referred to as the "claim for parentage."

claims arising out of the same subject matter to be litigated in a single lawsuit." *Id.* "Res judicata requires proof of three elements: '(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.'" *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). We address each of these elements below.

With respect to the first element, we must determine whether the trial court is a court of competent jurisdiction and whether the Agreed Final Decree of Divorce is, in fact, a final judgment on the merits. As a district court with general jurisdiction, the trial court had jurisdiction over the subject matter (including the divorce and the parent-child relationship) and the parties. *See* Tex. Const. art. V § 8; Tex. Gov't Code Ann. § 24.007; Tex. Fam. Code Ann. §§ 6.305, 6.406. We conclude the trial court was a court of competent jurisdiction.

Next, we address the issue of whether the divorce decree is a final judgment on the merits. "A judicial decree is final when it disposes of all issues and all parties in the record." *In the Int. of R.R.K.*, 590 S.W.3d 535, 540 (Tex. 2019). "Finality must be resolved by a determination of the intention of the court as gathered from the language of the decree and the record as a whole, aided on occasion by the conduct

6

of the parties." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 203 (Tex. 2001) (internal quotations omitted).

The divorce decree does not leave Jennifer's status unadjudicated, as she argues in this appeal. Immediately after finding Amber is "*the* parent of [R.G.S.]" (emphasis added), the decree finds Jennifer has standing to bring a suit affecting the parent-child relationship pursuant to Texas Family Code section 102.003(a)(9). The decree contains language that "all relief requested in this case and not expressly granted is denied." The effects of this language are twofold. First, the relief denied by this language includes the relief requested in Jennifer's First Amended Original Counterpetition in the divorce/SAPCR wherein she asked the court to adjudicate parentage based on Texas Family Code section 160.106 and *Treto*. Secondly, outside the context of summary judgment orders, the inclusion of such language in an order indicates a trial court intended its order to be final. *Lehmann*, 39 S.W.3d at 204. By including the additional statement, "This judgment finally disposes of all claims and all parties and is appealable[]" the divorce decree in this case "leave[s] no doubt about the court's intention." *Id*. at 206. The decree contains "unmistakable language of finality[.]" *In the Int. of R.R.K.*, 590 S.W.3d at 544. We conclude the Agreed Final Decree of Divorce is a final judgment on the merits by a court of competent jurisdiction, satisfying the first element of the doctrine of res judicata.

Turning to the second element of res judicata, we compare the Agreed Final Decree of Divorce in the divorce/SAPCR case to the Original Petition to Adjudicate Parentage filed in this case and conclude the parties in each case are identical, satisfying the second element of the doctrine of res judicata.

Lastly, we consider whether this action is based on claims which were, or which could have been, raised in the first action. In her Original Petition to Adjudicate Parentage in this case, Jennifer "seeks to formally adjudicate the parent-child relationship between Jennifer [] and the child." During the April 26, 2021 hearing in the divorce/SAPCR, Jennifer testified as follows:

> Q. And just for clarification purposes, at the time that y'all decided to have a child, did you sign this reproductive agreement?
>
> A. Yes, ma'am.
>
> Q. And is that agreement attached to our first amended counterpetition?
>
> A. Yes, ma'am.
>
> [. . .]
>
> Q. And on the first amended pleadings that you filed, you have asked the court to adjudicate parentage if they are able to do so. Is that correct?
>
> A. Yes, ma'am.
>
> Q. And are you using the Treto case and 160.106 under the Code for that argument. Is that correct?
>
> A. Yes, ma'am.
>
> [. . .]

8

Q. And if the court cannot adjudicate you as a parent, you are asking to find that you have standing, adjudicate you as a nonparent conservator of the child?

A. Correct.

We conclude Jennifer's claim seeking an adjudication of parentage in this case was included among the claims that were raised in the divorce/SAPCR, satisfying the third element of res judicata. Thus, all three elements of the doctrine of res judicata apply in this case. Because Jennifer's claim for adjudication of parentage is barred by res judicata, we overrule Jennifer's first issue.

In her second issue, Jennifer asserts, "The trial court erred when it refused to adjudicate Appellant as a parent when it failed to construe the Uniform Parentage Act in gender neutral terms pursuant to U.S. Supreme Court precedent, thereby depriving her of equal protection under the U.S. Constitution." *See* Tex. Fam. Code Ann. §§ 160.001, et seq. We conclude Jennifer's constitutional arguments are barred by the doctrine of res judicata.

In *Fite v. King*, 718 S.W.2d 345 (Tex. App.—Dallas 1986, writ ref'd n.r.e.), Fite brought an action against King to establish paternity. *Id.* at 346. The trial court granted summary judgment in King's favor based on the one-year statute of limitations which existed in 1981 under Texas Family Code section 13.01. *Id.* Fite did not appeal from the summary judgment. *Id.* The following year, the United States Supreme Court invalidated section 13.01 on the grounds it denied illegitimate

children equal protection of the law. *Id*.; *see also Mills v. Habluetzel*, 456 U.S. 91 (1982). Fite then filed a second paternity action against King. *Fite*, 718 S.W.2d at 346. The trial court once again granted summary judgment, this time based on res judicata. *Id*. The Dallas Court of Appeals affirmed, reasoning:

> Fite acquiesced in the application of the unconstitutional act and did not appeal. Indeed, Fite could have pursued the matter, as did the natural mother in *Mills*, and secured the same holding as did the natural mother in *Mills*. Instead, Fite stood by and allowed an adverse judgment to become final. The fact that a statute upon which a judgment is based is unconstitutional and the error correctable on appeal, does not make the judgment void ab initio so as to render it assailable as a void judgment in a collateral attack. We conclude, therefore, that the fact that the statute barring the original action was declared unconstitutional, after the judgment in the original action had become final, does not prevent application of the doctrine of res judicata in the present case.

*Id*. at 347 (citing *King v. King*, 291 S.W. 645, 648 (Tex. Civ. App.—San Antonio 1927, writ dism'd.) (divorce decree premised on a statute classifying rents and revenues as separate property was not subject to collateral attack as void when the statute was subsequently declared unconstitutional)); *see also A.H.D. Hous., Inc. v. City of Hous.*, 316 S.W.3d 212, 222 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (concluding res judicata barred litigation of constitutional challenges to city ordinance in state court after other constitutional challenges were rejected in federal court).

The fact that Jennifer makes arguments in this action that were not made in the divorce/SAPCR does not change the result, because res judicata is determined

by comparing the claims in the second suit with the claims and permissible claims in the first suit, not by comparing the subsidiary issues or arguments supporting those claims. *See Rosetta Res. Operating, LP*, 645 S.W.3d at 226 ("Res judicata applies to claims, not issues."). That said, Jennifer's counsel acknowledged during the September 6, 2022 hearing in this case that the issues Jennifer raises in this case could have been raised during the April 26, 2021 hearing in the divorce/SAPCR:

> THE COURT: What legal authority is your client contending that this court – *let's assume we're back in April of 2021 -- could I have adjudicated her as a parent of this child*?
>
> [JENNIFER'S ATTORNEY]: Your Honor, I believe that Paven [sic] versus Smith, the U.S. Supreme Court instructs this court that it is a matter of constitutional right that a same sex spouse has the same rights as an opposite sex spouse to parentage. The Uniform Parentage Act then instructs us and instructs this court that 160.703 finds that a father who consents to a child born by assisted reproduction is the father of the child that results from that assisted reproduction.
>
> [. . .]
>
> THE COURT: Are there any other legal bases under which *your client would have been claiming* that this court was obligated to adjudicate her as a parent of the child *in April of 2021* other than assisted reproduction?
>
> [JENNIFER'S ATTORNEY]: Yes, Your Honor, I have two more bases. The second bases [sic] is the presumption of paternity regarding a child born during a marriage to the mother and the application of that presumption of paternity to maternity under 160.106, and the fact that there was no attempt to rebut that adjudication of paternity, maternity. And then my third bases [sic] is that the mediated settlement agreement between the parties stipulated to their agreement to adjudicate my client as the parent of the child.

11

[. . .]

THE COURT: You're not challenging the constitutionality of any statute. You're challenging this court's ruling.

[JENNIFER'S ATTORNEY]: *I'm challenging this court's ruling. I wish that I had been here in April of 2021 to tell you about the Paven [sic] case.* (Emphasis added).

Jennifer could have raised these issues in the divorce/SAPCR, and if unsuccessful, she could have challenged the trial court's ruling by filing a post-trial motion or an appeal. "Instead, [Jennifer] stood by and allowed an adverse judgment to become final." *Fite*, 718 S.W.2d at 347. We conclude the preclusive effects of the divorce decree are not overcome by Jennifer's assertion that the trial court erred in the divorce/SAPCR by interpreting and applying the Uniform Parentage Act in violation of her constitutional rights. We overrule Jennifer's second issue.

## Conclusion

Having overrule all of Jennifer's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on August 13, 2024
Opinion Delivered December 5, 2024

Before Golemon, C.J., Johnson and Chambers, JJ.

12